# IN RE MEDTRONIC, INC. SHAREHOLDER LITIGATION

## A15-0858

Supreme Court of Minnesota.

Filed: August 16, 2017

---

Eric J. Magnuson, Robins Kaplan
L.L.P., Minneapolis, Minnesota; and
James K. Langdon, Michelle S. Grant,
James K. Nichols, Dorsey & Whitney
LLP, Minneapolis, Minnesota, for appellants.

Vernon J. Vander Weide, Gregg M.
Fishbein, Richard A. Lockridge, Kate M.
Baxter-Kauf, Lockridge Grindal Nauen
P.L.L.P., Minneapolis, Minnesota; Mark C.
Gardy, James S. Notis, Jennifer Sarnelli,
Gardy & Notis, LLP, New York, New
York; and Emily Komlossy, Ross Appel,
Komlossy Law, P.A., Hollywood, Florida,
for respondent.

David R. Marshall, Leah C. Janus, Fredrikson & Byron, P.A., Minneapolis,
Minnesota, for amicus curiae Minnesota
Chamber of Commerce..

## OPINION

GILDEA, Chief Justice.

This appeal requires that we decide whether claims that respondent and shareholder Kenneth Steiner asserts in a class-action challenge to a merger transaction were properly dismissed. As relevant here, the district court determined that some claims are derivative, rather than direct, and therefore are subject to the demand and pleading requirements of Minn. R. Civ. P. 23.09. Because Steiner failed to comply with that rule, the district court granted the company's motion to dismiss. With the exception of one claim, the court of appeals reversed, holding that most of the claims are direct and therefore Rule 23.09 does not apply. *In re Medtronic, Inc. S'holder Litig.*, No. A15-0858, 2016 WL 281237, at *2-5 (Minn. App. Jan. 25, 2016). We affirm in part, reverse in part, and remand to the district court for further proceedings.

## FACTS

The Consolidated Amended Class Action Complaint ("Amended Complaint") alleges the following facts. On June 15, 2014, Medtronic, Inc., a Minnesota corporation, announced its decision to acquire Covidien plc, a public Irish company, in a transaction to be structured as an inversion.[1] In

1. "An inversion is a corporate merger where a U.S. based company merges with a foreign corporation to create a new corporate entity that is incorporated outside the United States of America." *In re Medtronic, Inc. Derivative Litigation,* 68 F.Supp.3d 1054, 1057 (D. Minn.

this transaction, Medtronic acquired Covidien through a new holding company, Medtronic plc, incorporated in Ireland, with Medtronic and Covidien then becoming wholly owned subsidiaries of the Irish holding company ("new Medtronic"). Shareholders of Medtronic had their stock converted into shares in new Medtronic on a one-for-one basis, while shareholders of Covidien received $35.19 and 0.956 shares of new Medtronic for every share of Covidien stock held. Ultimately, former Medtronic shareholders collectively owned approximately 70 percent of new Medtronic and former Covidien shareholders collectively owned approximately 30 percent of new Medtronic.

As a result of the inversion transaction, Medtronic, previously a Minnesota corporation, now operates as a wholly owned subsidiary of an Irish company and thus is subject to Ireland's tax laws. Steiner alleged that Medtronic reduced the interest of its shareholders to 70 percent of new Medtronic in order to secure and protect the tax benefits it sought in this transaction. In addition, because the Internal Revenue Service treats an inversion transaction as a taxable event for the shareholders of the U.S. company, Medtronic shareholders incurred a capital-gains tax on Medtronic shares held in taxable accounts but received no compensation from the company for this tax liability. On the other hand, Steiner alleged, Medtronic officers and directors who incurred an excise-tax liability on their stock-based compensation as a result of the transaction were reimbursed by Medtronic for that expense.

After the transaction was announced, Steiner filed a class-action lawsuit against Medtronic and members of its Board of Directors (collectively, "Medtronic").[2] The Amended Complaint alleged claims for breach of fiduciary duty (Counts I-II); claims for violations of the Minnesota Business Corporation Act, Minn. Stat. ch. 302A (2016) (Counts III-X); and claims for violation of the Minnesota Securities Act, Minn. Stat. ch. 80A (2016) (Counts XI-XII). The Amended Complaint specifically alleged the following injuries to Medtronic shareholders:

(1) disparate treatment of Medtronic, as compared to Covidien, shareholders;

(2) disparate treatment with respect to the tax liability incurred by Medtronic shareholders and the lack of compensation for that liability as compared to the reimbursement paid to Medtronic's officers and directors for their excise-tax liability;

(3) violation of provisions of the Minnesota Business Corporation Act that were intended to protect shareholders of Minnesota corporations;

(4) the possibility of a "reduction of shareholders['] interest in the combined company to 60% causing significant dilution to shareholders['] interest in New Medtronic."

In the Amended Complaint, Steiner did not allege that Medtronic, as a corporation, was harmed; rather, he alleged that Medtronic's shareholders were harmed as a result of the wrongful conduct, regardless of the lack of harm (or even any benefit) to

2014) (citation and internal quotation marks omitted).

**2.** The shareholder class action was brought in two separate complaints, each filed by a different former shareholder of Medtronic, Inc.: Lewis Merenstein and Kenneth Steiner. The district court consolidated the two actions on September 26, 2014, with the Merenstein action serving as the primary case. Because plaintiff Kenneth Steiner has been the only party to appear in the appeal on behalf of the shareholders, we refer only to Steiner in this opinion.

Medtronic itself. Additionally, Steiner does not challenge the business decision to merge with Covidien, but instead challenges the Board's decision to structure the transaction as an inversion.

Before the district court, Medtronic moved to dismiss the claims under Minn. R. Civ. P. 23.09, for failure to make a demand on the Medtronic Board; and under Minn. R. Civ. P. 12.02, for failure to state a claim upon which relief could be granted. Medtronic asserted that Steiner's claims essentially alleged that Medtronic paid too much for Covidien, which the company argued is "quintessentially" a derivative claim that affects all shareholders equally. Steiner asserted that because he alleged injuries suffered by the shareholders, the claims are direct, not derivative, and therefore Rule 23.09 does not apply. The district court concluded that the harms alleged due to the violations stated in Counts I-X of the Amended Complaint "relate [to] the structure of the merger as an inversion," and as such, "are direct to Medtronic and derivative to Medtronic's shareholders." Thus, these claims were dismissed for failure to comply with Minn. R. Civ. P. 23.09. Counts XI and XII were dismissed under Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief could be granted.

Steiner appealed. The court of appeals affirmed in part and reversed in part. Specifically, the court of appeals agreed with the district court that Count VII of the Amended Complaint, which alleged that the excise-tax reimbursement violated Minn. Stat. § 302A.521, alleged "a harm that belongs to the corporation because voiding the Excise Tax Reimbursement would result in a return of funds to the corporation." *In re Medtronic, Inc. S'holder Litig.*, 2016 WL 281237, at *5. The court of appeals concluded, however, that the remaining claims that the district court dismissed under Minn. R. Civ. P. 23.09 are direct claims. *In re Medtronic, Inc. S'holder Litig.*, 2016 WL 281237, at *4.[3]

We granted Medtronic's petition for review to determine whether the court of appeals correctly concluded, under Minnesota law, that Steiner's claims are direct, rather than derivative.

## ANALYSIS

This case comes to us on review of an order granting a motion to dismiss. We review de novo the district court's decision on a motion to dismiss, considering "only the facts alleged in the complaint, [and] accepting those facts as true." *Sipe v. STS Mfg., Inc.*, 834 N.W.2d 683, 686 (Minn. 2013) (citation and internal quotation marks omitted). The determination of whether shareholder claims are direct or derivative presents a question of law subject to de novo review. *See, e.g., Nw. Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche*, 535 N.W.2d 612, 617 (Minn. 1995) (explaining that the question was "whether the trial court erred in concluding as a matter of law" that the investor's claims "are nonderivative").

---

**3.** The court of appeals concluded that Count XI adequately alleged a violation of Minn. Stat. § 80A.68 under the standard for a motion to dismiss, *see Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 606 (Minn. 2014) (requiring a court to accept the facts alleged as true and construe all reasonable inferences in the non-moving party's favor), and therefore the district court erred in dismissing that claim. *In re Medtronic, Inc. S'holder Litig.*, 2016 WL

281237, at *6-7. In addition, the court of appeals directed the district court, on remand, to consider whether Count XII was pleaded with the particularity required by Minn. Stat. § 80A.69(a), and Minn. R. Civ. P. 9.02, 12.02(e). *In re Medtronic, Inc. S'holder Litig.*, 2016 WL 281237, at *7-8. We denied review of the court of appeals' decision on these two claims, and therefore we do not address Counts XI-XII in this opinion.

## I.

As an entity distinct from its stockholders, a corporation holds the separate right to sue in its own name. *Singer v. Allied Factors, Inc.*, 216 Minn. 443, 13 N.W.2d 378, 380 (1944). Thus, "Minnesota has long adhered to the general principle that an individual shareholder may not assert a cause of action that belongs to the corporation," but instead must sue in a representative capacity on behalf of the corporation if asserting a claim alleging an injury to the corporate entity. *Nw. Racquet*, 535 N.W.2d at 617; *see also Singer*, 13 N.W.2d at 380; *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 754 N.W.2d 544, 550 (Minn. 2008) (explaining that a shareholder bringing a derivative claim "step[s] into the corporation's shoes" to "bring suit against wrongdoers on behalf of the corporation" (citations and internal quotation marks omitted)); *Janssen v. Best & Flanagan*, 662 N.W.2d 876, 882 (Minn. 2003) ("Derivative suits allow shareholders to bring suit against wrongdoers on behalf of the corporation, and force liable parties to compensate the corporation for injuries so caused."). When a derivative claim is brought, the complaining shareholder-plaintiff must, among other things, "allege with particularity the efforts . . . made . . . to obtain the desired action from the directors" of the corporation and the failure of the corporation to take such action. Minn. R. Civ. P. 23.09.

A direct claim, on the other hand, alleges an injury to the shareholder rather than an injury to the corporation. *See Nw. Racquet*, 535 N.W.2d at 619 (explaining that allegations of "specific misrepresentations" that "affected Northwest directly in its decision to purchase the debentures" stated a "claim of direct fraud and . . . injury" to an investor); *Seitz v. Michel*, 148 Minn. 80, 181 N.W. 102, 105 (1921) (explaining that a shareholder asserting a claim alleging only an injury to the shareholder "may sue in his own right"); *see also* 12B William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 5908 (perm. ed., rev. vol. 2000) ("[I]n a direct shareholder action, the shareholder need only show an injury to himself that is distinct from any injury suffered by the corporation."). In contrast to the demand and other procedural requirements imposed on a derivative claim, *see* Minn. R. Civ. P. 23.09 (explaining that the rule applies "[i]n a derivative action brought by one or more shareholders . . . to enforce a right of a corporation . . ."), a direct claim is not subject to Rule 23.09. *See Agostino v. Hicks*, 845 A.2d 1110, 1117 (Del. Ch. 2004) ("A decision finding that a complaint alleges direct claims allows plaintiffs to bypass" the requirements of rules governing derivative actions).

This appeal requires that we determine whether Steiner's claims are derivative, in which case the district court correctly dismissed those claims for failure to comply with Minn. R. Civ. P. 23.09; or direct, in which case the district court erred in dismissing the claims because Steiner did not have to comply with the rule. The distinction between the two types of claims is in who was injured, the corporation (derivative) or the shareholder (direct). Although the distinction can be easily stated, the line that separates the two claims is not easily drawn. *See Agostino*, 845 A.2d at 1117 ("The distinction between direct and derivative claims is frustratingly difficult to describe with precision.").

The court of appeals recognized that the derivative-claim rule is "based on the standing and real-party-in-interest doctrine that preserves the corporation's claims to itself." *In re Medtronic, Inc. S'holder Litig.*, 2016 WL 281237, at *3. But, given that Minnesota appellate courts do not often review shareholder claims,

and the parties' dispute focused on "whether a claim can be direct if it injures all shareholders," the court of appeals turned to Delaware law. *Id.* Relying on the Delaware Supreme Court's decision in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), the court of appeals concluded that a direct claim is available when "(1) all shareholders share the same injury; (2) the shareholders would receive the benefit of the recovery or remedy; and (3) the injury is not suffered by the corporation." *In re Medtronic, Inc. S'holder Litig.*, 2016 WL 281237, at *3; *see also id.* (explaining that the *Tooley* court's analysis is "consistent with ... Minnesota case law").

Medtronic argues that the court of appeals erred in embracing the *Tooley* standard because that standard is inconsistent with Minnesota law. Medtronic asserts that the relevant inquiry is whether the alleged injury is felt similarly and indirectly by all shareholders due to their status as shareholders. If so, Medtronic argues, the claim is derivative. Steiner contends that Delaware law, as reflected in *Tooley*, is consistent with Minnesota law. Thus, Steiner argues, a direct claim asserts wrongful conduct of the corporation and its directors that results in injury to shareholders alone, not to the corporation. In other words, Steiner argues that the proper test is "who is injured and who will get the recovery—the corporation or shareholders."

We begin with a discussion of Minnesota law because Medtronic was a Minnesota corporation before its transaction with Covidien, and it retains its operational headquarters in Minnesota. *See Kratky v. Andrews*, 224 Minn. 386, 28 N.W.2d 624, 626 (1947) (applying the law of the state of incorporation in a case involving a dissolved corporation); *Farmers Educ. & Co-op. Union of Am., Minn. Div. v. Farmers Educ. & Co-op Union of Am.*, 207 Minn. 80, 289 N.W. 884, 886 (1940) (stating that a shareholder's right to object to corporate conduct is "determined by the law of the state of incorporation" (citation and internal quotation marks omitted)). In *Wessin v. Archives Corp.*, our most recent case on the direct-versus-derivative distinction, some of the minority shareholders sued the corporation, asserting claims of fraud, misrepresentation, unfair prejudice, and breach of fiduciary duty. 592 N.W.2d 460, 462-63 (Minn. 1999). To determine whether the shareholders' claims were direct or derivative, we "focused the inquiry to whether the complained-of injury was an injury to the shareholder directly, or to the corporation," looking "not to the theory in which the claim is couched, but instead to the injury itself." *Id.* at 464. We concluded that any damage to the shareholders individually from the alleged misconduct involving misappropriation and wasting of corporate assets resulted only from their status as shareholders. *Id.* at 465. Further, we noted that any recovery of the alleged wasted corporate assets "should be on behalf of the corporation." *Id.* at 466. Thus, we held that the claims were based on harm to the corporation, with only indirect harm to the shareholders, and were derivative. *Id.* at 464-65.

In *Northwest Racquet*, a purchaser of subordinated debentures alleged that the debt seller, Midwest Federal Savings & Loan Association, along with its auditor, materially misrepresented its financial condition in offering the debenture investment to the purchaser. 535 N.W.2d at 613. The issue was whether the claims were direct or derivative. *Id.* at 617. We declined to look to the law of other jurisdictions, noting that "the method in Minnesota for distinguishing between a direct and a derivative claim is to consider whether the injury to the individual plaintiff is separate and distinct from the injury to other per-

sons in a similar situation as the plaintiff." *Id.* We concluded that the material misrepresentations that formed the basis for the claims "affected Northwest directly in its decision to purchase the debentures," which resulted in an injury that was distinct from any injury to debenture holders generally. *Id.* at 619. These claims, therefore, were "not derivative claims belonging to Midwest." *Id.*

The distinction our cases have articulated between direct and derivative claims focuses on the nature of the injury alleged to determine to whom any recovery will belong. *See, e.g., In re UnitedHealth Grp.,* 754 N.W.2d at 556 ("[T]he very nature of a shareholder derivative suit is that the cause of action, although brought by a shareholder, belongs to the corporation."); *Janssen,* 662 N.W.2d at 882 (stating that a "derivative action actually belongs to the corporation" and derivative suits "force liable parties to compensate the corporation for injuries"); *PJ Acquisition Corp. v. Skoglund,* 453 N.W.2d 1, 4-5 (Minn. 1990) (concluding that a shareholder's claims were derivative because the injury was to the corporation itself and any relief would go to the corporation). *See also* 2 Am. Law Inst., *Principles of Corporate Governance: Analysis and Recommendations* § 7.01 (a)-(b) (1994) (explaining that an action to redress an injury sustained by a corporation is derivative, while an action to redress an injury sustained by the shareholder is direct). We used slightly different language in *Wessin* and in *Northwest Racquet* to describe this test, which was appropriate for the different claims and alleged harms at issue in those cases, but ultimately, our analysis in each case focused on the same two basic questions: who suffered the injury alleged and thus who would receive the benefit of any recovery. Further, the analysis we employed in *Wessin* and *Northwest Racquet* is consistent with two of our earliest cases addressing shareholder claims, *Seitz v. Michel,* 148 Minn. 80, 181 N.W. 102 (1921) ("*Seitz I*"), and *Seitz v. Michel,* 148 Minn. 474, 181 N.W. 106 (1921) ("*Seitz II*").

In *Seitz I,* we held that claims based on an alleged diversion of corporate funds were derivative because "[t]he wrongs complained of are wrongs against the corporation" and the "funds diverted should be restored to the corporation." 181 N.W. at 105. Thus, we concluded, a shareholder "must sue in a representative capacity for the benefit of the corporations, and not for the damages to him individually." *Id.* In *Seitz II,* we stated that the additional allegation of a conspiracy to "freeze out" the plaintiff-shareholder "may have been directed against the plaintiff ... but [the defendants'] acts resulted ultimately in the dissipation of corporate funds. *Plaintiff is injured just as all other stockholders are injured when the officers of a corporation waste or misapply its money.*" 181 N.W. 106 (emphasis added).

The key to *Seitz I* and *Seitz II* was our determination that the wrongful acts injured the *corporation,* and, as we observed in those cases, when the corporation is injured, any injury to shareholders is only by reason of the injury to the corporation. *See Seitz I,* 181 N.W. at 105 (noting that the "wrong done results in injury to the stockholders collectively" because the "value of all the stock has been diminished" but the recovery belongs to the corporation); *Principles of Corporate Governance* § 7.01, cmt. c (explaining that a "wrongful act that depletes corporate assets and thereby injures shareholders only indirectly, by reason of the prior injury to the corporation, should be seen as derivative in character"). This observation did not establish a requirement that a shareholder's injury must be separate and distinct from any injuries to all other shareholders to bring a direct action, as some states have

held. *See, e.g., Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008) (explaining that a direct claim rests on "some individualized harm not suffered by all of the stockholders at large").[4] Rather, the observation was simply a useful shorthand for the basic questions we addressed: who was injured and who is entitled to any recovery. *See Seitz I*, 181 N.W. at 105 (explaining that the claim is derivative because the "funds diverted should be restored to the corporation"). Put more simply, when shareholders are injured only indirectly, the action is derivative; when shareholders show an injury that is not shared with the corporation, the action is direct. *See Principles of Corporate Governance* § 7.01 (a)-(b) & cmt. c (explaining that "regardless of the verbal formula employed," the "basic distinction" between direct and derivative claims is in deciding who was injured and is thus entitled to the recovery).

■ The court of appeals applied a three-part test derived from its review of the Delaware Supreme Court's decision in *Tooley*, 845 A.2d 1031. *In re Medtronic, Inc. S'holder Litig.*, 2016 WL 281237, at *3. We do not see a need to resort to Delaware law to answer the direct-versus-derivative question here given the guidance available from our own precedent. Moreover, the *Tooley* test has been limited to claims asserting breach of fiduciary duty. *See Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1127 (Del. 2016) ("*Tooley* and its progeny deal with the narrow issue of whether a claim for breach of fiduciary duty ... must be asserted derivatively or directly."). We conclude that the test we have applied previously, which distinguishes direct from derivative claims by identifying who suffered the injury and therefore who is entitled to the recovery for that injury, provides the answer to the direct-versus-derivative question here.

## II:

■ Having clarified the test for distinguishing between direct and derivative claims, we next consider the nature of the injury resulting from the misconduct alleged in Steiner's claims, and who would benefit from any recovery.[5] As noted earlier, we are concerned only with the injuries claimed as a result of the misconduct alleged in Counts I-X of Steiner's Amended Complaint. Steiner alleged three general

---

4. We noted, for example, that the plaintiffs in *Wessin* were only "some of the minority shareholders." 592 N.W.2d at 462. *Northwest Racquet*, on the other hand, involved claims of misrepresentation made to one debenture holder. 535 N.W.2d at 613. We had no occasion to decide whether all shareholders must share the same injury for the claim to be direct, as the court of appeals held in this case, *see In re Medtronic, Inc. S'holder Litig.*, 2016 WL 281237, at *3, or whether the complaining shareholder's injury must be separate and distinct from any injury to other shareholders, as Medtronic contends, because *Wessin* and *Northwest Racquet* involved fewer than all shareholders. *See State v. Hess*, 684 N.W.2d 414, 421 n.6 (Minn. 2004) (explaining that considerations in an opinion that are unnecessary to the decision are dicta).

5. In his brief, Steiner focused only on his breach-of-fiduciary-duty claims (Counts I-II), asserting that the direct/derivative distinction does not apply to his statutory claims under Minn. Stat. ch. 302A because those provisions provide shareholders with personal rights that can be asserted directly. The mere fact that statutory claims are asserted does not render the direct/derivative analysis inapplicable because "we look not to the theory in which the claim is couched, but instead to the injury itself." *Wessin*, 592 N.W.2d at 464. *Wessin* involved statutory claims under Minn. Stat. ch. 302A, and the Wessins argued that "all claims" under that chapter "are direct." *Id.* at 465. "[T]his assertion," we said, "ignores our prior precedent." *Id.* Thus, we reject Steiner's argument that the direct/derivative analysis applies only to Counts I-II of the Amended Complaint.

types of harm: injury due to the capital-gains tax liability imposed on some shareholders as a result of the transaction; injury due to the excise-tax reimbursement made to Medtronic officers and directors; and injury due to the dilution of shareholders' interest in Medtronic. We conclude that the claims asserting injuries due to the excise-tax reimbursement are derivative, but the claims asserting injuries due to the capital-gains tax liability and dilution of shareholders' interests are direct.

We begin with the harm alleged due to the excise-tax reimbursement paid to Medtronic's officers and directors, generally found in Counts VI-X of the Amended Complaint. These claims essentially alleged that Medtronic improperly reimbursed corporate officers and directors for the excise-tax liability that resulted from the transaction, without following statutory procedures before doing so or in violation of duties owed to Medtronic shareholders. Regardless of the specific theory for these claims, the alleged wrongful conduct caused an injury to Medtronic as a corporation, not to the individual shareholders, because corporate reimbursement of an excise-tax liability resulting from the transaction is at bottom an alleged waste of corporate assets. *See Wessin*, 592 N.W.2d at 465 (noting that claims based on "misappropriation and waste of corporate assets" are "traditional derivative claims"). Further, if Steiner were to prevail on these claims, the recovery would go to

Medtronic (as a return of the improperly paid funds) rather than to the shareholders. Thus, as Counts VI-X of the Amended Complaint state derivative claims, the district court did not err in dismissing these claims.[6] *See id.* at 465-66 (concluding that allegations that the corporation had improperly paid additional dividends to its majority shareholders were derivative).

As to the capital-gains-tax claims, the allegations of the Amended Complaint explain that the shareholders are harmed because the tax liability is imposed on them solely in their status as shareholders. Medtronic itself did not incur a capital-gains tax liability on the transaction, and therefore could not recover for the injury caused by this alleged harm. Because any recovery would go only to the shareholders who incur a capital-gains tax liability, rather than to the corporation, the court of appeals correctly held that claims asserting this harm are direct. *See Nw. Racquet*, 535 N.W.2d at 619.

Finally, we turn to the allegations of harm due to dilution of Steiner's (and class members') interest in the corporation. Accepting the allegations of the Amended Complaint as true, which we must do, *Sipe*, 834 N.W.2d at 686, we conclude that the district court erred in dismissing these claims. In the Amended Complaint, Steiner did not contend that the inversion diluted shareholders' interests in the company by decreasing the value of the corporation

---

**6.** Both the district court and the court of appeals identified Counts VI-X of the Amended Complaint as the claims that asserted allegations of injury due to wrongful conduct based on the excise-tax reimbursement. Steiner did not contend otherwise before our court. At oral argument, counsel for Steiner conceded that he made no claim for damages related to the excise-tax claims, specifically withdrawing the remedies asserted in the Amended Complaint for disgorgement and a constructive trust as they related to the ex-

cise-tax allegations. The excise-tax allegations, Steiner's counsel explained at oral argument, are simply evidence of the corporation's breach of the fiduciary duty owed to its shareholders. The claims for breach of fiduciary duty, however, are asserted in other counts and there is no reason to retain these counts merely to provide evidence of injuries alleged in other counts, particularly because Steiner concedes that there is no shareholder injury with respect to the excise-tax allegations.

itself. Instead, Steiner alleged that Medtronic structured the inversion to secure and then protect the corporation's expected tax benefit by taking from its shareholders a portion of their interest in the corporation, thus decreasing their ownership share in new Medtronic.

Medtronic asserts that this alleged harm is simply a standard overpayment claim, that is, that Steiner alleged only that Medtronic paid too much to Covidien shareholders as part of the transaction, which is mismanagement or waste of corporate funds and therefore derivative. Some decisions recognize that claims asserting a dilution in the *value* of one's shares are derivative because "such claims naturally assert that the corporation's funds have been wrongfully depleted, which, though harming the corporation directly, harms the stockholders only derivatively so far as their stock loses value." *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1260-61 (Del. 2016) (citation and internal quotation marks omitted); *see, e.g., Feldman*, 951 A.2d at 732 (stating that claims for stock dilution are generally derivative). Other decisions, however, recognize that allegations of stock-dilution harm that result from "an improper transfer—or expropriation—of economic value and voting power from the public shareholders to the majority or controlling stockholder" state a direct claim. *Gentile v. Rossette*, 906 A.2d 91, 100 (Del. 2006) (concluding that claims alleging injury due to "an extraction ... of a portion of the economic value and voting power" from shareholders states a direct claim).

Unlike a derivative overpayment claim, in which the shareholders claim that their shares have diminished in value by reason of the decrease in value of the corporation's assets due to overpayment in a transaction, Steiner alleged that class members' ownership interest and voting power were diluted by Medtronic to provide adequate protection for the tax benefits it sought in the transaction with Covidien. In other words, rather than a simple loss of economic value, Steiner alleged an injury based on the loss of certain rightful incidents of his ownership interest, which is an injury that falls only on shareholders and not on the corporation.

We reiterate that we view the allegations of the Amended Complaint as true at this stage of the case, and therefore we express no opinion on Steiner's ability to prevail on claims that allege a dilution injury. *See Sipe*, 834 N.W.2d at 686. Under this standard, and under the direct-versus-derivative test stated above, the claims are direct because the *nature* of the injury (the dilution) harms the shareholders, and does not harm the corporation. Indeed, according to Steiner, the dilution was solely for Medtronic's benefit—to protect the tax advantage it sought in the transaction. Therefore, we conclude that the district court erred in dismissing claims that rest on allegations of injury due to dilution.[7]

## CONCLUSION

For the foregoing reasons, we affirm the court of appeals' decision in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

7. After oral argument, Steiner filed a letter citing to supplemental authority that came to his attention after he filed his brief. Medtronic responded to the citation of supplemental authority by offering reasons why the case did not support Steiner's claims. Steiner then moved to strike Medtronic's response letter because it went beyond a "state[ment] without argument," Minn. R. Civ. App. P. 128.05. We agree. We therefore grant the motion to strike.

Affirmed in part, reversed in part, and remanded.

STRAS, J., took no part in the decision of this case.